# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

**MICHAEL C. CARTER,**

    **Plaintiff,**

**vs.**                                                                       **CASE NO. 1:06CV185-MP/AK**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are **not** supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded for further proceedings.

**A.**    **PROCEDURAL HISTORY**

Before the Court are two applications consolidated by the Appeals Council and remanded to the ALJ for a hearing held on July 10, 2007, and a decision, which was rendered on March 14, 2008, covering the disability period from December 31, 1994,

through March 31, 2001, (the date last insured). The ALJ determined that Plaintiff was not under a disability during this time period.

B.     **FINDINGS OF THE ALJ (R. 280-294)**

The ALJ found that Plaintiff had the severe impairments of status-post decompression L4-L5 lumbar laminectomy and fusion times three, right hand weakness, history of depression, and a history of alcohol abuse. The ALJ found that Plaintiff did not meet the Listings for either Musculoskeletal impairments (Listing 1.04) or Mental impairments (Listing 12.04). The ALJ further found that he was unable to perform his past relevant work as a maintenance repairer, work that was performed at a medium to heavy exertional level, but he was able to perform sedentary work compromised by an inability to perform work requiring climbing, working at heights, or around dangerous machinery. (R. 288-293). Plaintiff was also limited by his mental impairments to simple, unskilled, entry level, low stress jobs that require very little judgment. He has further restrictions in using his right hand. (R. 288). Because of the non-exertional limitations, a vocational expert was called to testify and he found that there were a number of jobs which Plaintiff could perform in the national economy. (R. 294). Consequently, the ALJ found him not disabled.

C.     **ISSUES PRESENTED**

Plaintiff argues: that the ALJ erred in rejecting the findings of the state agency and the regional quality review office that found Plaintiff met Listing 1.05(C); that the ALJ erred in rejecting the treating physician opinions of Drs. Berger and Bordini; that the ALJ erred by not posing fully inclusive hypothetical questions to the vocational expert;

**No. 1:06CV185-MP/AK**

and the ALJ erred in not properly considering the workers compensation finding of permanent and total disability.

The government responds that the ALJ properly determined that Plaintiff did not meet Listing 1.05(C); that the ALJ properly credited and/or articulated reasons for not crediting the opinions of Drs. Berger and Bordini; that the ALJ found the workers compensation decision informative as to the issue of past relevant work, but offered no factual bases for a decision about his ability to perform other work; and finally, the ALJ was only required to include in his hypothetical limitations supported by the record, which he deemed did not include the mental limitations set forth by Dr. Bordini or the physical limitations found by Dr. Berger for the reasons articulated in the record.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D.     STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It

**No. 1:06CV185-MP/AK**

is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

**No. 1:06CV185-MP/AK**

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**No. 1:06CV185-MP/AK**

E.   **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff injured his back at work in 1992 lifting a heavy cabinet and underwent a partial discectomy by Dr. Mauldin.[1] (See History at R. 510). He re-herniated his L4-5 disc twice resulting in a third surgery being performed by Dr. Phillip Parr in December of 1994, after he had been released to work full time as a mechanic on April 20, 1994. (R. 461).

Dr. Parr wrote on September 12, 1995, that he believed Plaintiff had reached maximum medical improvement with a 17% permanent physical impairment. (R. 455). Dr. Parr noted one month earlier that Plaintiff's increased pain indicated a failed back syndrome complicated by depression and probably alcoholism. (R. 457). Objective tests conducted at this time showed a solid fusion and no nerve compression, although the view of the area was somewhat obscured by the fusion hardware. (R. 456).Alright

Plaintiff refused any invasive procedures and was released to his primary care physician for pain medication management in 1996. (R. 474). Dr. Paul Witte began treating him at Advanced Pain Management Services in August 1996 for neurogenic pain with medication and physical therapy.

He began mental health treatment from Dr. Bordini at this time who found that Plaintiff was significantly limited in his ability to sit and stand for extended periods of time, had fluctuating depression which compromised his ability to deal with stress, but did not affect his concentration, and his alcohol abuse was in remission. (R. 488, 519-543). His depression improved within a few weeks of starting the anti-depressant

---

[1] The records of the original injury are not in the record.

**No. 1:06CV185-MP/AK**

medication. (R. 524). By May 1996, his depression was "stable." (R. 525). In June, 1996, he had begun drinking again, although he reported that he was not abusing it. (R. 526). His anxiety and feelings of hopelessness increased and he began seeing Dr. Bordini more frequently, then his mood stabilized and he was about to reach MMI(R. 531, 534), but by December 1996, he had missed several appointments, his anxiety had increased and so had his alcohol consumption. (R. 535). However, he continued seeing Dr. Bordini and participated in physical therapy and by June 1997, he was found to be only mildly depressed. (R. 539). In September he had resumed heavy drinking and by October his mood was more depressed and his pain increased. (R. 542-543). He stated he had discontinued drinking, but he had not been taking his prescribed anti-depressants either.

     Dr. Bordini completed a Mental RFC for the time period between 1996 and 1997 and found Plaintiff with no understanding or memory problems, moderate concentration and social interaction problems, with marked to extreme limitations in maintaining regular attendance and completing a normal workday and workweek "due to pain." (R. 181-183).

     Treatment of his back continued in 1998 at Shands with Dr. Berger, where he presented on examination with significant pain, increased use of pain medication, and a prescription for a wheelchair. (R.143-148). He had difficulties with some stronger medication and other procedures were again presented to him, but he did not want to try them. (R. 126-140). By May 2000, he reported "satisfaction with current pain regimen." (R. 123).

**No. 1:06CV185-MP/AK**

In April 2000 he had resumed counseling for his depression. (R. 96-108).

A consultative examination dated November 3, 2000, by Dr. Christopher Leber found Plaintiff to have difficulty with sitting, standing, walking, lifting and carrying," and recommended a neurology consult. (R. 163). He presented for the examination in a wheelchair. (R. 161).

State agency assessments found that persistence and pace may be affected by pain as would interaction with others due to irritability and depression, but otherwise cognitive functioning was intact. Specifically, assessments on October 25, 1996 (R. 489-501) and July 16, 2000 (R. 109-120) found him moderately limited in his ability to complete a normal work day, that he would "often" fail to complete tasks timely.

**F.        SUMMARY OF THE ADMINISTRATIVE HEARING (held on July 10, 2007)**

Plaintiff appeared with counsel. At issue is the time between December 31, 1994 and March 31, 2001. (R. 382). He completed the 12th grade and worked as a maintenance mechanic until 1992, when he fractured several discs in his back lifting cabinets. (R. 383, 394). He has received weekly workers compensation benefits since then. (R. 383). He is also receiving Social Security disability payments now based on a subsequent application (March 21, 2000) and different onset date, but the same impairments. (R. 384). He was prescribed a wheelchair in 1994 by Dr. Leber, but he can walk briefly with a cane. (R. 386). In 1994, he was recovering from surgery in 1992, then re-injured himself in 1994 and had a third and final surgery in 1995. (R. 387). His other issues are severe pain and muscle spasm, as well as depression. (R. 390). Dr. Bordini treated him during the relevant time period for depression and Dr.

**No. 1:06CV185-MP/AK**

Leber treated him for his pain. (R. 391). No further back surgeries are contemplated, but he may have surgery for his stomach ulcers. (R. 392). He has been hospitalized once for depression. (R. 395-396).

A hypothetical was presented to the vocational expert which included a younger individual, 12th grade education, past relevant work as mechanic, able to perform sedentary work with no climbing, no working around dangerous machinery, and limited to simple, unskilled, low stress jobs. (R. 398). The expert testified that he could not perform his past relevant work, but he could perform a number of low skilled sedentary jobs even if his right hand causes problems in writing. (R. 398-399). Plaintiff's attorney added that If pain and depression prevented him from working on a regular schedule would these jobs be available and the expert answered that they would not be. (R. 400). Counsel suggests that this limitation is supported by the mental evaluation of Dr. Bordini, Exhibit B-13F. (R. 400).

### G. DISCUSSION

   a) Listing 1.05(C)

Plaintiff argues that the ALJ improperly interposed her opinion over that of Plaintiff's treating physicians, state agency and regional review doctors, who all agreed that Plaintiff met the requirements of Listing 1.05(C).

The government argues that Listing 1.05(C) was not at issue, and indeed it is Listing 1.04 that concerns musculoskeletal conditions.

Listing 1.04 provides:

**No. 1:06CV185-MP/AK**

1.04 *Disorders of the Spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root or the spinal cord. With:

(C) Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in ability to ambulate effectively, as defined in 1.00(B)(2)(b) which is defined "generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."

While the Court will construe Plaintiff's argument to be based on Listing 1.04 (C), not on 1.05(C), it cannot further make Plaintiff's argument for him and he does not explain how he meets this listing specifically nor cite to all the medical sources that state he meets these listing requirements. He was prescribed one cane and told Dr. Leber he used it only at home. He was also prescribed and seen using a wheelchair, not crutches or a walker, and there is no page reference to testing that shows nerve root or spinal cord "compromise." Indeed, the CT scan taken after his final surgery showed no nerve root compression, although the imaging was not conclusive.

There is no merit to this ground.

    b)    <u>Treating physician opinions and the hypothetical to the VE</u>

Plaintiff argues that the ALJ had no basis for rejecting the opinions of Drs. Berger and Bordini, who found him unable to perform sedentary work.

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). If an ALJ rejects a treating physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

The government references the ALJ's explanation for giving little weight to these opinions at page 292. Actually, after reciting summaries of **all** the medical evidence, the ALJ states: "These opinions have been considered. However, subsequent records, such as Exhibit B-4F, as discussed previously, have also been considered and the

**No. 1:06CV185-MP/AK**

opinions have been given little weight." (R. 292). Exhibit B-4F are the records of Dr. Berger. (R. 121-148).

This is, in the opinion of the undersigned, not an explicit nor adequate reason for assessing weight to Dr. Berger's opinion. Although the government argues that his statements were "unsupported and inconsistent with the record" and "brief and conclusory," the ALJ did not give these explanations for giving little weight to his opinion.

However, even accepting the opinion of Dr. Berger as true, nothing changes in the result. Dr. Berger does not offer an opinion that would support a finding of disability and his treatment notes show that although Plaintiff reported significant levels of pain, he presented at several examinations in no acute distress and reported improvement after the right medications were administered. (See R. 123). Thus, even though the ALJ did not express explicit reasons for not giving Dr. Berger's opinion more weight, any error by the ALJ in this regard is deemed harmless. Lubinski v. Sullivan, 952 F.2d 214, 216 (8th Cir. 1991); Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (harmless error if outcome remains same despite the lapse).

As for Dr. Bordini, the ALJ explained that she "concurs with the general findings of the state agency report of July 16, 2000, regarding the severity of the claimant's mental impairments during the period at issue as it is more consistent with regard to the overall evidence of record than the other opinions of record including that of Dr. Bordini." (R. 288). The state agency doctor was of the opinion that Plaintiff suffered slight limitations in daily living activities, social functioning, but often had deficiencies in

concentration, persistence and pace[2]. (R. 113-119). The only difference in the two opinions appear to be that Dr. Bordini found no limitation in Plaintiff's concentration abilities, but both doctors **agree** that his abilities with regard to persistence and pace, (whether you call it this or the ability to maintain regular attendance and complete a normal workday) are limited. Dr. Bordini calls it marked and extreme, the state agency physician uses the terms moderate and often limited, but regardless this limitation was not included in the hypothetical posed to the vocational expert and is not, in the opinion of the undersigned subsumed in the category of simple, unskilled, low stress jobs. In fact, the expert said that a limitation in this regard (ability to complete a normal work day), when questioned on this issue by Plaintiff's attorney, would negate the jobs he listed.

Therefore, since both the treating physician and the state agency doctors, whom the ALJ accorded great weight, found limitations in this area, this should have been included in the hypothetical posed to the vocational expert and this case should be remanded on this issue. See <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999) (for expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which includes all of Claimant's impairments).

The court is aware that this case has a long and convoluted procedural history and has been pending for several years. It is strongly suggested that the administration

---

[2] Another assessment on October 25, 1996 was similar to the July 2000 evaluation in that Plaintiff was found to be moderately limited in his ability to complete a normal work day and that he would "often" fail to complete tasks timely. (R. 489-501)

**No. 1:06CV185-MP/AK**

address and resolve this narrow issue by the most expedient means possible. Since there is ample medical evidence of Plaintiff's condition during the relevant time period already in the record, numerous assessments, and little to be gained from another hearing, perhaps the issue can be presented to a vocational expert via written questionnaire or other means permitted by the law or regulations. The only issue herein remanded is to pose to a vocational expert the assessment of the state agency physicians that Plaintiff is **often** limited in his ability in the areas of concentration, persistence and pace resulting in failure to complete tasks in a timely manner, and what, if any, jobs are available to him with this type of limitation. The expert testified at the hearing on July 10, 2007, that if Plaintiff had a "marked" inability to perform activities within a regular schedule there would be no jobs available to him, and if this is his response when presented with the limitation of "often "then the administration should strongly consider that benefits be awarded for the relevant time period.

    c)    <u>Workers compensation finding</u>

Plaintiff argues that the ALJ erred in not giving weight to the decision of the Florida Workers Compensation Board as required by law. Generally, the findings of disability by another agency are not binding on the Commissioner because the definitions of disability from one agency to another often differ. <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1241 (11th Cir. 1983). However, the Florida Supreme Court has interpreted Florida Workers Compensation law and the definitions of disability contained therein, to be sufficiently similar to the federal regulations that any disability

determinations by that agency must be accorded great weight in social security disability determinations. Falcon v. Heckler, 732 F.2d 827, 831 (11th Cir. 1984).

The ALJ relied upon the previous decision by ALJ Thompson and his findings on the workers compensation award because no new medical records or other grounds were offered that would alter the previous decision and ALJ Thompson properly assessed the weight of the WC award.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **REVERSED AND REMANDED** for additional vocational expert testimony to include the findings of the State Agency physician in his assessment dated July 16, 2000, that Plaintiff was "often" limited in his ability to complete tasks in a timely manner and how that would affect his ability to perform the jobs available to him in the national economy.

At Gainesville, Florida, this **27th** day of October, 2009.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:06CV185-MP/AK**